In the Matter of James A. O'LEARY.

No. 2003–49–M.P.

Supreme Court of Rhode Island.

March 14, 2003.

David Curtin, for Plaintiff.

Francis Flaherty, Warwick, James A. O'Leary, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This attorney disciplinary case is before this Court pursuant to a recommendation of the Supreme Court Disciplinary Board (the board) that James A. O'Leary (respondent) be suspended from the practice of law for sixty days. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the Board determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The respondent fully admitted the relevant facts of this proceeding and he stipulated that his conduct was in violation of Article V, Rule 8.4(c) of the Supreme Court Rules of Professional Conduct.[1] Admitted to the practice of law in this state in 1975, respondent has developed a professional specialty in real estate law, particularly in the organization of multifamily and assisted-living facilities financed through various programs administered by the federal government.

In 1997, respondent became a shareholder in the law firm of Moses and Afonso, Ltd. As a shareholder, he was an authorized signatory on the law firm's client account, which was maintained at Citizens Bank. His usual practice in acting as a settlement agent for real estate closings was to prepare a voucher sheet listing various payments to be made from the proceeds of the sale that had been deposit-

1. Article V, Rule 8.4(c) of the Supreme Court rules of Professional Conduct provides: "It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation * * *."

ed into the client account. The respondent would have checks prepared and drawn on the account from the information contained in the voucher sheets and the checks would be issued.

On January 28, 1999, respondent improperly began taking money for his personal use from the client account. On thirty-six occasions he submitted voucher sheets authorizing disbursements made payable to Fleet National Bank or Bank-Boston from closing funds. The voucher sheets falsely indicated that these disbursements were related to the real estate transactions. Upon receipt of the checks, respondent would use that money to replenish his personal line of credit at those banks. In all, the respondent obtained a total of $29,286.42 using this ruse.

In October 2001, respondent ceased misappropriating firm funds from the client account and he did not submit for payment two of the checks that he fraudulently had obtained. In November 2001, he traveled to Florida to sell property, intending to use the proceeds from that sale to make restitution to the firm. However, while he was in Florida the other shareholders in the firm discovered his misappropriation of money. They confronted him upon his return, and he fully admitted his misconduct. The respondent resigned voluntarily and his misconduct was reported to the board. He subsequently made full restitution.

At the ensuing disciplinary hearing the only issue for the board's determination was the appropriate sanction to recommend to this Court. Disciplinary counsel recommended an eighteen-month suspension from the practice of law, and respondent requested a recommendation of a public censure. In weighing those requests, the board considered the standards for imposing lawyer sanctions, as adopted by the American Bar Association, in addi-tion to the mitigating and aggravating factors present in the case. *In re Fishbein,* 701 A.2d 1018, 1020 (R.I.1997) (per curiam).

Pursuant to the applicable standard (the standard) of the American Bar Association Standards for Imposing Lawyer Sanctions, the factors to be considered are (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating factors. The board applied these factors within the framework of our numerous previous decisions establishing that the purpose of professional discipline is to protect the public and maintain the integrity of the profession, rather than punish the attorney. *See In re O'Donnell,* 736 A.2d 75, 81 (R.I.1999) (per curiam); *In re Scott,* 694 A.2d 732, 736 (R.I.1997) (per curiam); *Carter v. Cianci,* 482 A.2d 1201, 1203 (R.I.1984) (per curiam).

In evaluating respondent's mental state, the board properly considered his intent at the time he misappropriated the firm's money and his later remorse. On thirty-six occasions and over a protracted period, respondent executed a carefully crafted plan to defraud his law partners by intentionally generate false documents to shield his unprofessional behavior from discovery. However, by October 2001, and before the partners found out about his nefarious behavior, respondent's mental state was transformed from one of deceit to one of remorse. He stopped misappropriating money of his own volition and began making arrangements for restitution before his fellow partners confronted him.

In regard to the third prong of the standard, the board determined that respondent's conduct did not harm any clients and that the only injury suffered by the firm was the incremental loss of the availability of legal fees. This loss was

ameliorated by respondent's full restitution.

In the final part of its analysis the board considered the aggravating and mitigating factors surrounding respondent's misconduct. The repetitive and long-term nature of his misconduct was a significant aggravating factor that precluded the board from recommending a sanction of less than a suspension of respondent's privilege to practice law. However, the board determined that other significant mitigating factors warranted a downward departure from the disposition recommended by disciplinary counsel.

The board found the following mitigating factors: respondent has practiced law in this state for twenty-seven years with an unblemished professional record; he fully accepted responsibility for his actions, making a full admission to his partners and also making full restitution; and he fully cooperated with the office of disciplinary counsel from the beginning of its investigation through the conclusion of the proceedings before the board. Moreover, respondent expressed genuine regret for his breach of duty to his partners and his breach of duty to his profession. He was also truly remorseful for his breach of duty to his family.

Additionally, the board noted that respondent has led an honorable life, serving his country in the military, including a tour of duty in Vietnam. He has also been engaged in many charitable endeavors for his church, his community and his profession. The final and most compelling mitigating factor found by the board was that respondent's conduct did not involve the misappropriation of client money.

After carefully weighing all of the aforementioned factors, the board has recommended that we suspend respondent from the practice of law for sixty days. On January 16, 2003, respondent appeared before this Court, with counsel, pursuant to our order directing him to show cause why he should not be disciplined. After our review of the record and having heard the representations of respondent and disciplinary counsel, we agree with the board's recommendation.

This court gives great weight to the recommendations of the board. See *In re Cozzolino*, 811 A.2d 638, 641 (R.I.2002) (per curiam). In this case the board carefully analyzed respondent's admitted misconduct in light of our previous decisions and the relevant American Bar Association Standards. We believe the record fully supports the board's recommendation. We note that had respondent's conduct resulted in the misappropriation of client money as opposed to firm monies, the discipline imposed would be more severe.

Accordingly, the respondent, James A. O'Leary, is hereby suspended from the practice of law for sixty days commencing thirty days from the date of this opinion. The respondent is ordered to comply with the requirements of Article III, Rule 15 of the Supreme Court Rules of Disciplinary Procedure.